v. Emily W. Murphy, General Services Administration Mr. Bledek for the Aboundance, Mr. Moffat for the Appellate Good morning, Your Honors, and may it please the Court. Our principal submission in this case is that the plaintiffs here, each of whom is a member of Congress, each of whom is a member of the House Committee on Oversight and Government Reform, and each of whom signed the seven-member rule request at issue here, have standing in this case because the injury they have sustained is personal to them. Now, the district court's ruling is, as we see it, is a sharp departure from the ordinary rules of standing. This Court, the Supreme Court, have consistently ruled that an individual who has a statutory right to information, who is deprived of that right, not only suffers concrete and particularized injury, but that injury is personal to the right holder. The government, well, no, I'm sorry, not the government, the agency argues that personal means private, and that this is private because this is not private because it runs with the job, runs with the seat in Congress. That's the argument. That is that argument, Your Honor, and that argument. What's the answer to that? Well, there are several answers to it, Your Honor. Let me start with the key case, Raines v. Byrd, which although it involves an intrabranch dispute, it has been used as the template for standing in cases like this. The key problem in Raines is that the Court refers to the standing in Coleman v. Miller as if the plaintiffs there suffered only institutional harm. That's the way the government reads Raines. That's the way the district court reads Raines. But that leaves out an important factor. If you look at the beginning of the Court's discussion of standing in Raines, the Court makes it clear that a fundamental requirement of Article III is that the plaintiffs suffer a personal injury. And therefore, it is inconceivable that the plaintiffs in Raines, excuse me, the plaintiffs in Coleman's, not only suffered an institutional injury, but that injury was personal and distinct to them. And we know that for a couple of reasons. One, only the 20 members of the Kansas legislature whose vote was nullified by the allegedly illegal action by the lieutenant governor, only they had standing even though there were more plaintiffs than that. And certainly the members of the legislature who voted in favor of the resolution would not have had standing. So that right, the right not to have their vote nullified, is a right that is both personal to them, no one else could have asserted it, and is also an institutional right in the words of Raines. Now, there are other arguments that I think also demonstrate that the right here is personal. For example, let's just look at the indicia of a personal right. A personal right... Before you do that, I'm sorry, could you just define personal for me in this context? Is it private? Is it individualized? What does it mean? It's an individual right conferred by Congress on an identifiable, discrete class of people who have a right of access that no one else has. So that right belongs to them. That makes it specific, in particular, I don't see how it makes it personal. Because only... It's not personal in the sense that it was in Raines or McCormick, or it was used in Raines, or in Powell versus McCormick, or any case in which there's a personal benefit to the plaintiff from getting the relief. Well, in this case, the only... So let me try to answer this in several ways. First, that's the same argument in Coleman, right? The argument in Coleman was that the illegal action by the lieutenant governor harmed the legislature, not necessarily personally the individual members who objected, right? So you have a case like Coleman in which the injury has to be personal in one sense under Article III, or else they can't get into court, right? So in response to your question, the right is a personal right that carries with their official status. The right here is conferred by Congress, not to the House, but either to the committee or a discrete group, at least seven members of the committee, who join together collectively to file a request. That right belongs to them, no one else. The district court says they possess that right. But as the GSA points out, that right that belongs to them under 2954 ends the moment they leave Congress. That is correct. It's connected to their, not only their position in Congress, but to their position on the Oversight Committee. That is correct. So they say, how can it be, isn't it just like reins? That's their argument. Well, it's not just like reins because reins upholds legislator standing when they're serving both a person, when they can show both a personal right and in reins an institutional right. Here, Congress did not delegate this power to Congress or to the House of Representatives. It delegated this power to a discrete group of individuals who serve on a committee or the committee. So the right, there's no question that the statute is a rights-creating statute. It uses all the indicia of rights creation. The word shall is there, and the word, and it describes who is entitled to exercise that right. Members have a lot of rights of the sort that you're describing, don't they? I don't believe that's the case, Your Honor. The right to use the House gym? I don't believe that's a statutory right, Your Honor. So you're saying it's because of the statutory foundation? Yes, sir. Okay. They have a right to a pension. But that is, again, a statutory right. I didn't expect that would be your answer, because it seems to me that would be a personal matter. Because it doesn't depend when they leave Congress. But, Your Honor, what my point is, is that the fact that it confuses you. It confuses me. It can't be that a congressman doesn't have standing to challenge the revocation of his retirement rights, right? But that's correct. Of course. No, I'm arguing that members of Congress have standing, yes. Or what about salary? Because that does end when you leave Congress. But I had taken from Powell that salary, which is something that runs with the seat, is still a personal right. Well, here's the problem. I think Powell would say it was both a personal and a private right. Partly, the word personal is used in two different contexts in Reins, which causes the confusion. Personal is used at the beginning of the opinion to describe the impact on an individual who has a right, and that right is deprived. So those are the plaintiffs in Coleman. They all had a personal right, but they were also advocating an institutional interest. Reins uses that. Reins then says that they had no personal right. Their right was institutional. And that may be true as a descriptive matter. It is not true for Article III purposes. My point is that for Article III purposes, Congress can confer a right.  The Necessary and Proper Clause plainly gives Congress the power to do that. And once these members of Congress have that right, then courts ought to enforce it. You know, this court has always made clear that when Congress expects that when it assigns a mandatory duty to the executive branch, the executive branch will obey it. And the courts will be ready to provide a remedy if they don't. That is this case. What about the agency's argument that there's no, unlike Reins, there's no cause of action in this statute? Where does that play in? So in order to sue, you need two things. You need an underlying right, and you need a right of action. Our principal submission, because this is where we lost below, is that we have a right. We have a personal right to these legends. In terms of the right of action, there's no question that the plaintiffs here would have a right back in 1928 under mandamus or ultraviarious acts. The government cites Armstrong to say that you need to show that there's a right of action. Well, Armstrong reaffirms McNulty. That line of cases has recognized nonstatutory rights of action that still exist. Do you have to win on this point to have standing? Isn't this unrelated to standing? Yes, Your Honor. You don't need to convince us that you have a cause of action to have Article III standing, right? That is absolutely correct. That's the steel company, Your Honor. Yeah. Okay. Because I just want to be sure I'm right about that. You're right that there's a motion to dismiss also pending, correct, that the district court hasn't gotten to that raises this question, correct? That is correct, Your Honor.  So we don't have to decide that question. That is correct, Your Honor. Let me ask you another question about whether we have to decide something. The government talks a lot in its brief about separation of powers. Where do you think that fits in here? Well, again, this is using Reins, which is an intra-branch dispute, to argue that an inter-branch dispute is somehow non-justicial. But this Court routinely entertains cases where there are these kinds of disputes. And at times the Justice Department invites these kinds of disputes. The irony here is, you know, when the Justice Department sued to enjoin AT&T from giving the records over in AT&T versus the U.S. Department of Justice, there's no statutory right of action. They originally filed under 1345 claiming they could represent the United States. The district court rejected that argument. So, you know, my own view is that, to respond to your question, the right of action issue just doesn't apply here. No, but what about separation of powers? Where does that fit in? Is that a marriage question? The government, the agency argues that this is a critical element of standing or of free standing. It may be a prudential concern, but this Court has repeatedly rejected the argument that Article III courts are not available to referee these kinds of disputes. On these types of disputes, you mean what? Access. I'm sorry, Your Honor. Congressional access to executive branch information. This is not an action by the Congress or even by the House. That is correct. So what cases do you have where this sort of dispute, where it's not the House, but a member has been adjudicated? Well, Your Honor, in AT&T, Mr. Moss, Representative Moss, was allowed to intervene on his own behalf in the district court. This court did not ever challenge that. There's a citation pointing that out in the case, and the citation is CF to Kennedy versus Sampson. Now, Kennedy versus Sampson is that case. Whether it is still good law in the circuit is an issue that I don't think we need to get to here. But Kennedy versus Sampson, Senator Kennedy brought the case pro se. There was no authorization. An authorization here. There was a subpoena, though. I'm sorry, sir? Yes, a subpoena had been issued. A subpoena had been issued, yes. So the House was involved in the case. The House ratified. And the Court said that, as I recall here, that, yes, that the House can designate a member to act on its behalf. That's not what's happening here. Well, Your Honor, I believe it is. Even by statute. By statute, Your Honor. So this is where the separation of powers argument seems to be to come in. It's true that the Court has entertained many a case, several cases anyway, in which the House has sought information via subpoena approved by the House by resolution. They've designated somebody, the House itself or a member, to pursue the matter for enforcement. Here we have a statute saying any seven members who will change over time on any occasion, demanding whatever it is they want to demand under 2954, can go and seek a judicial resolution. There is no precedent for that. Not one. Well, apart perhaps from Kennedy v. Sampson and, once again, the beginning of the AT&T case, where the House had not authorized Mr. Moss to represent it until after the House had ruled and the case went up to the Court of Appeals. It certainly came to this Court. Yes, that may be. But once in the Court of Appeals and the issue was finally noticed and standing was addressed, they had standing. Right. I'm sorry. You would, by the same token, the statute, by your rights, could authorize any single member to seek enforcement of a demand. Yes, though I think that would be unwise, and I don't think Congress would pass that statute. Even sticking with the current seven-person rule, there's really no limitation on the degree to which a small group of members can create a dispute, an interbranch dispute, and force the courts to resolve it. Right, and that was Congress's decision, ratified by the President. Under those circumstances, it reading reigns, I think, fairly. It cautions, as a matter of separation of powers, that personal be understood in a fairly narrow sense, at least one that, as Judge Millett referred to, runs with the seat. Well, in this case, I agree that the right – I see my time is up. No, go ahead. In this case, it is true that the right runs to the seat. That doesn't mean it can't be personal, just the way it couldn't have been personal for Senator Kennedy or for Mr. Moss. The right here is a – I mean, what distinguishes this case from the subpoena cases, and what's important here is Congress, in 1928, following McGrane, which took three years for the Supreme Court to sort out the enforceability of a congressional subpoena, gave its oversight committees a different way to seek information, just to the oversight committees, to seek information from the executive branch. To seek it, not necessarily to be able to enforce it in court. Congress says they can demand the information of the executive. With all respect, Your Honor, that renders the statute a dead letter. If the statute's unenforceable, which is the point – It's enforceable if the House majority back the seven members. Otherwise, they can create – any seven members can create disputes constantly between the branches and implicate the courts. It's extremely – it would be extremely imprudent to read the statute that way. Well, Your Honor, I think the text of the statute bears that reading. I think the history – By the way, here – maybe this is a case in point. The plaintiffs are now members of the majority in the House. They have not been given a resolution to enforce this demand. They don't – I mean, because they don't believe that a statute that is designed in large measure to – Well, we don't know what they believe. It may be that they just can't get one, or they calculate that they can't get one, that the leadership doesn't want to stir up a dispute over this. Isn't the – wasn't one of the purposes of this statute to vest the minority with the right to obtain information? Yes, and that is the way – And wouldn't that be eviscerated if they had to seek – Well, that's our bottom-line point. The argument that has been made would render this statute acknowledging. You know – Go ahead. In Henry IV, when Glenn Dower – when Hank says, I can summon beasties from the deep, Glenn Dower says, Aye, but will they come? That's where we are. You can make the demand. Unions make demands. Students make demands. Protestors make demands. But now – but the inside of the grain, Your Honor, is that requests for access by Congress to the executive branch without, quote, enforcing process – This is not Congress. It is – well, Congress has acted. I mean, again, the framework here is the statute enacted by Congress that delegates authority both to a committee and to individual members of Congress. This was a carefully calibrated delegation to avoid what I think your concern is, sort of the rogue actor problem. The dispute in this case makes it clear that the injury here is distinct and palpable to the plaintiffs because they, unlike their committee members, wanted to conduct oversight over the implementation of the Trump lease. And you say that sort of – you raise the specter of abuse. Well, the GSA is the one that suggested that the plaintiffs in this case invoke the seven-member rule. I mean, the irony here is if you go back and look at the correspondence, the seven-member rule request was filed in response to a request by four ranking members of the committees. Was GSA acting before or after it got advice from OLC? This is prior to advice from OLC. Yes, Your Honor. I just wanted to ask – I'm rather confused about the role of separation of powers. Article 3 of standing is a separation of powers, inquiry or limitation on courts to the case or controversy requirement. But there should be two separation of powers arguments here. One is going through the elements of traditional standing, and the other one is this, as Judge Ginsburg was saying, sort of Congress versus the executive branch. And what I'm trying to understand is when does the action of a subset of Congress, a group of members or one member, start triggering that second category of separation of powers concerns? I assume that every individual member of Congress, maybe I'm wrong, can file FOIA requests. That is correct. And come to courts to enforce that demand for information from the executive branch without anybody having separation of powers qualms. That is correct. Okay. So then how do we – is it because it's seven members on a committee that we have separation of powers concerns here that are trying to get backfilled into the standing inquiry or – but I think you would acknowledge, you know, that we get concerned about separation of powers. It doesn't have to be the whole Congress. You can have one House of – the House or the Senate versus the executive branch or certainly versus the President. You're going to have separation of powers issues. So what is – how do we look at something that is – depends on being a committee member? It's a right you have as a committee member. But it's only – and it's not individual like FOIA. Seven of you get together. Right. How do I know whether that triggers a separation of powers problem? It wouldn't happen if they did it individually under FOIA. Well, let me make a couple of points. If you look at the exhibits we put in, historically there is no separation of powers fight here, in large measure because this statute does not reach the President or the executive office of the President. The statute only empowers requests to executive agencies. So there is none of the sort of fighting over the President's records, those kinds of cases. So in some sense, the risk of getting into a wrangle over executive privilege is much less in this case than it would be when a subpoena is issued. The second thing I would say is there's been a history of collaboration between the Congress and the executive branch in which these matters have been resolved. It is a rare case where what happened in this case, which is GSA was perfectly willing to send the plaintiffs the information until OLC told them not to. That's the finding of the inspector general. So, you know, none of the records that we are seeking are different, except for a couple of legal opinions, are different from records we were provided prior to the OLC opinion. And none of them raise questions of separation of powers. When you talk about the history of working this out, you said Congress and the executive branch. But under 2954, we're told there are no cases. I meant the requesters, Your Honor. So is there something somewhere that tells us that there's a long pattern of, or we just assume it because we don't see the cases? I just don't know. Is there some record keeping somewhere that says 2954? Generally they've been worked out and they get the information? Is there a tradition? There are a number of pieces of correspondence in the Joint Appendix which reflect that pattern. That's true even aside from 2954. I'm sorry, sir? That's true aside from 2954. Committees routinely make requests. Sometimes they resist it. Sometimes they resist it only for a while. And then usually they work it out. Right. But that's why Congress passed 2954, because they wanted a statutory right that they could enforce, not simply that repeated the opportunity any member of House has to just simply ask an agency for records. They wanted to formalize this right. This comes in the wake of McGrane, where it took years to enforce a congressional subpoena. The Supreme Court, I think, took three years to decide McGrane. This was an alternative. It was an alternative for the committee and it was a safeguard. It was an alternative to getting routine reports. Well, Your Honor, I think that is correct. But it was brought to satisfaction with the reporting requirement. And the legends of history makes it clear that a request and response was a better way for both sides, better for the committee and better for the executive branch. Because it was specific and they didn't just have a deluge of reports coming in that nobody wanted. Exactly, Your Honor. But that works. That accomplished its purpose. There's no bearing on whether this can be enforced by these seven members. With all respect, Your Honor, I think it has enormous bearing because if the government, if the executive branch is allowed to say, we're simply not going to honor any seven-member rule requests, the statute is largely dormant. Is there no further questions? Thank you, Your Honor. Thank you. May it please the Court. This inter-branch dispute does not present a proper case for controversy under Article III because members of Congress lack standing to seek judicial enforcement of their demands for information from the executive branch. Is it inter-branch any time an individual member, just one member of Congress asks for information? I'm really curious about this question. It's a great question, Your Honor. And I think the critical point is what capacity they're asking for the information. So one individual member files a FOIA request to deal with a constituent need or because they want information as part of their committee work and so because that capacity is tied to their legislative role. No, because critically, we're not disputing that the plaintiffs can invoke FOIA. No, but I'm asking why that doesn't. Because FOIA is a right that rests on private parties, wholly apart from whether they hold public office. How does that affect the member of Congress' Article III standing, whether the statute applies to other people as well? You just said it depends on the capacity in which they're asking. Because what Reins tells us is you have to figure out whether this is a personal, private injury or an institutional injury. When you invoke FOIA, even if you're a member of Congress, the fact that you're a member of Congress is completely irrelevant. You just happen to be a member of Congress that's invoking a right to information that Congress has provided to the public at large. The reason they're not invoking FOIA is because the statute they're invoking is a statute that only applies to members of Congress, gives members of Congress rights that members of the public do not have For 2954, for example, doesn't have the exemptions for, among other things, privileged information. And they are asking for that information not in their privacy. There would be a different issue whether they could get information or they're trying to get information that implicates it. I think what I'm trying to make sure I understand, it's not that they don't have an informational injury. It's the nature of the statutory informational injury that's conferred. If I could make the point most crisply, for a private party, FOIA gives them a right in their personal capacity to use the information however they wish. This statute does not confer that sort of right on Congressmen. It confers a right on Congressmen to request information for a legislative function, to engage in oversight. And we know this from just looking at their own complaint. If you look at their complaint and look at the allegations of inaction. I'd rather think about the statute a little bit. So if you had Congress pass FOIA and then it had another section of FOIA that said, for members of Congress, you get super FOIA. And that is you don't have to pay fees. You get faster action. Every individual member of Congress, faster action on these. You have a tighter timeline. And it narrowed down the withholding privileges to things that would have constitutional implications, but got rid of everything else. Would that be, would they be able to have an Article III injury there? So certainly I don't dispute that, the procedural part of what you said. That if, for example, out of respect for federal officers, Congress decided to say, look, you have the same private rights everyone else does, but you go to the front of the queue. Their injury is still an injury in their private capacity. Their right to the information is the right that all other members of the public have. No, no, no. They have a greater right to information because they don't get all the, you don't get as many withholdings as you would. And so on that aspect, that's why I said the procedural part of it, it's fine. The substantive part of what you said, I think that is important. And the reason it's important is because at that point what Congress, the point of that statute, you can call it FOIA or you can label it however you want, but that statute is not conferring rights on congressmen in their private capacities. This is enabling federal legislative oversight. We know this because in the Supreme Court cases in McGrane and this Court's decision in Mazars, we know that Congress does not have the right to seek information for its own sake. It can only seek information necessary and proper to its legislative functions. Indeed, in Watkins, the Supreme Court swearly held that a. . . Well, we're not talking about Congress acting here. It's all the worse if it's an individual Congress. Do you have a statutory conferral? No, put aside the group of seven thing here. Do you have a statutory conferral of an informational. . . Right, I guess I'm having trouble. . . I mean, I hear what you're saying about fine, they can have better procedures, but I'm having trouble understanding how as a matter of the Article III elements, it doesn't, it's no longer a personal, as that term is used in Article III standing cases, not personal versus private persons. Right, so in Raines, the focus was on is it in their private capacity. He admitted both in his brief and his argument today that the relevant section of Raines that talks about whether this was personal or institutional repeatedly uses personal and private interchangeably. The distinction was between in Powell. . . Look, getting your salary as a member of Congress, that's an institutional paycheck for an institutional job that runs with the seat and ends when you leave the seat, and it's so that you can perform the job that your constituents sent you to Congress to perform. That's not true, Your Honor. You would have the right to your back pay even if your term ran out. And they were also seeking a declaratory judgment. Right, but they were seeking a declaratory judgment because they had been deprived of their salary and their job. But that runs with the seat, just like Raines. No. And they don't have that right but for having been elected to Congress. No, Your Honor. Just like if any private person is deprived of the job that they are legally entitled to, that is a personal injury. But any private person that's denied information that they're statutorily entitled to from the executive branch also has a personal injury. Again, but this is not a right to information in their personal capacities. Again, if you look at it. . . If I could just make one point on this. In Watkins, the Supreme Court said that an investigation for personal aggrandizement of congressmen would be indefensible. On your view, all of the Supreme Court's cases that say that subpoenas have to be for a legitimate legislative purpose are all irrelevant. Because all Congress has to do is pass a statute. You need to read the statute here. Yes. Take a look at the statute. It says. . . The statute says that they can only seek information related to the jurisdiction of the oversight committee. That's what the statute's for. Right. A legitimate legislative function. They can't use this power to ask GSA to get them information about a person who has nothing to do with anything that's within the jurisdiction of the oversight committee. There is a jurisdictional element. You're right. Isn't that a complete response? No, because if they're not exercising their oversight. . . Let's say, for example. . . Excuse me. Congress has authorized them to exercise their oversight responsibility in this way. No, but it has to be. . . Let me put it this way. Under the statute, it has to be within the jurisdiction of the committee. Subjects. . . Topics can be within the jurisdiction of the committee, even if the person who's requesting the information is not asking for it for that reason. Under the statute, if they just said, I want to know this information just to embarrass the head of the GSA, it would be covered by the text of the statute. But it would be totally unconstitutional under cases like Watkins. Unless they ask for it under FOIA. If they ask for it under FOIA, because any private party could ask for that information. . . They're doing it to pursue their legislative function. Your subjective motive for why you're asking for the information is utterly irrelevant under FOIA. It is constitutionally significant for a legislator. We know under all of the Supreme Court's cases that deal with congressmen asking for information, whether it's individual congressmen or the committee or the Congress as a whole. . . Do you have other individual congressmen asking for information from the Supreme Court? Sorry, not from the Supreme Court. But the point is all. . . It would be very strange if Congress came to ask for something in a subpoena. It would be unconstitutional.  No, they might have standing, but the statute would be unconstitutional. I mean, there's a separate question whether a particular request in a particular case is seeking something that there's a distinct separation of powers barrier to receiving. That just strikes me as a totally different issue. Well, here's why it's not, Your Honor. I don't think you should read this statute in a way that would render it unconstitutional. And they can't have a private right to information. Let me give you, for example. . . Before you go on to another, I just want to focus on this. It seems to me the argument you're making now about an individual member of the Oversight Committee using this power to embarrass the head of GSA or something, the statute says it has to relate to any matter within the jurisdiction of the committee. So obviously, if the agency doesn't turn over the information and the congressman sues, one of the answers that the agency may well argue is this isn't related to a legitimate legislative activity. It's personal. That's a merits question. Here we're talking about standing. That is, whether the member of Congress can exercise the right that 2954 gives him or her to seek the information. Whether that information is covered by the statute is a merits question, just like whether it's privileged is a merits question. Isn't that right? Yes, I totally agree with that. Okay. But the reason that you have to have. . . Everything you're saying about everything you've been arguing for the past five minutes in response to Judge Millett's questions don't relate to standing. I don't think that's right, Your Honor, because the reason. . . The question you have to ask yourself is, is this statute conferring on these a private right or an institutional right? That's the question. Okay, well, let me ask you about that, okay? Yeah. Let's just. . . Let's go back to just basic black letter law standing principles, okay? Spokio, all these cases, they all state it the same way. They say to be. . . We're talking about injury must be particularized. That's one of the critical parts of standing, Article III standing, right? And the courts say to be particularized. Injury must affect plaintiff in a personal and individual way. That's what personal means. It doesn't mean private. It means to be particularized. It just has to affect the plaintiff in a personal way, which that does here because these seven members have a statutory right to that information. So this is a particularized injury that affects them in a personal way. It might be. . . Why isn't the right analysis? So it might be particularized, but it is not personal in the way that Raines described it. Again, he acknowledges, and you cannot read Raines any other way, it uses personal and private repeatedly interchangeably. There is just no question about it. So there's a different Article III test for members of Congress than everybody else? I mean, is that. . . The point is that, to take a step back along the lines of from first principles, the point of Article III standing the inquiries to determine whether this is the type of dispute that is properly resolved in Federal courts. And as Raines emphasized, Federal courts routinely adjudicate cases involving the rights and responsibilities of private parties. What they have never done historically is adjudicate disputes between members of Congress and the executive branch. The Supreme Court. . . That's just not true if they were filing a FOIA request. This is easy. We routinely adjudicate the duty of agencies to turn over information, and we don't say we won't hear you if you're a member of Congress. I'll say two things. One is the point I've already made, that a FOIA request has nothing. . . I just want to get to Article III. It has nothing. . . A FOIA claim does not depend on the Congressman's capacities as an officer. Whether they were a Congressman or not. . . What if the committee filed a FOIA request? I don't think committees actually can. . . Reporters Committee for Freedom of the Press files FOIA actions all the time. You can file. . . As a group can file a FOIA request. . . Private groups. . . Persons under FOIA. Private groups can, because private groups can be. . . Does FOIA say private groups, the definition of persons? It says persons. And under the law, we often recognize that corporations and things like that are persons. We do not normally apply that presumption to government entities. But if I can make the second. . . So a tribe, an Indian tribe or a city council can't file FOIA requests either? So I'm not sure about that, Your Honor. But look, let me make another point in response to your question about the FOIA. On their theory that what matters here is that there's a statute that purports to grant a personal right, Reins ceases to be a landmark constitutional case and becomes a pleading fault by Congress. Because all Congress had to do was say, Section 1, we confer on every member of Congress a personal right not to have their vote diluted by the Line Item Veto Act. Section 2, you can suit-enforce that personal right. That doesn't help you. I mean, you still have a vote dilution problem. But we know vote dilution is a. . . This is not a vote dilution case. This is a case about an informational right granted by a statute. Right. But that cuts the other way, Your Honor, because we know vote dilution is a cognizable Article III injury for private parties. Let me ask you. Every day of the week, people file Section 2 Voting Rights Act lawsuits where their Article III injury as private parties is vote dilution. So we know that vote dilution for a private party is Article III standing. And if the theory is, well, Congress passed a statute giving that so-called right to legislators, then Reins would have come out the other way if Congress had just drafted the statute differently. Let me try to ask you a question to put this in a bigger picture. Suppose when Congress creates a new executive branch agency. Well, take, for example, suppose when it had created the Department of Education. It put a provision in the statute which said, because it wanted to ensure accountability, that any seven members of either education committee can ask for information and that they can go to court to get it. Would that be unconstitutional? I mean, no standing? I'm sorry. Would they have no standing? I'm sorry. I missed the first part of your argument. The first part is Congress creates a new executive branch agency, like the Department of Education. It creates a brand new agency. And as part of the structure of that agency, when it's giving the agency its power and responsibility, it includes a provision which says any seven members of the education committees in either house can demand information from the department relating to the work of the jurisdiction of the education committee, and they can go to court to get it. No standing? Yeah. No standing? That's the same as the case. Even though Congress could turn around and abolish the Department of Education? The greater doesn't always include the lesser. I don't understand that. How can it be that if Congress can create and abolish the agency, it can't provide these kinds of procedures for obtaining information from the agency? For the same reason that Congress can create and abolish an agency, but it can't remove the head of the agency. We know under separation of powers principles, probably the most central separation of powers principle when it comes to Congress versus the executive is a concern about congressional aggrandizement. We know that in the removal context that Congress can't remove. We know that in the delegation context that Congress can't delegate to itself, even though it can delegate to executive agencies. There's just no reason why in the informational context it should be different. To the contrary, we know from the Supreme Court's cases about congressional information that they do not have a private right to information. They have a right in furtherance of their legislative functions. What if Congress passed an amended, or if 2954 originally enacted had said, look, forget time issues, FOIA's out there, and we can think of no people more expert in ensuring the transparency of government agencies than people who are members of Congress who were members of Congress. They are the most involved citizens you can have. And so as a fringe benefit for being a member of Congress, you get FOIA a la 2954, and you get to keep it for the rest of your life. It doesn't run with your seat. So, look, certainly for someone who is out of Congress, at that point I think that's right, and I think the formulation you use is exactly the right one. No, no, no. I'm still in Congress when I ask, but it's going to stick with me for life. It no longer runs with the seat. No, so I agree. I think that is exactly the right way to think about how they would have to have standing. You would have to view the statute as a fringe benefit of being Congress. You get your salary. You get your pensions. I would like to answer. I get that. That's my question. That's my question. Right. So this is now a fringe benefit of being. I'm repackaging it a little bit for you. Right. That is just not a reasonable way of understanding the statute. No, no, no. I'm asking, to be clear, for a question as to my remodeled statute. While you're a member of Congress, is that a personal right? Yeah. I think on your hypothetical statute, where it was a fringe benefit of being Congress, no different than your salary and your pension, I suppose at that point it would be a personal right. Even though it's limited to asking about things related to oversight committee, which I think is pretty much everything the executive branch does. Well, it's a weird hypothetical because you're giving them a fringe benefit. Sure. But on your hypothetical, yes. I would agree that that would at that point be a personal right. At least for standing purposes. There might be other issues with such a statute. Okay. So the key difference here is that once they're no longer, I guess, an oversight committee member, they can still be a member of Congress. They don't have to. It's not just the. No. It's two points that are related. The overall point is you can't plausibly read this statute as that sort of fringe benefit. We know that for a couple of reasons. One is that it doesn't run. You don't have it after you're out of office. In fact, you don't even have it if you leave the committee. But the more fundamental point, and this is where I mentioned their complaint before, everyone understands that this statute is an oversight statute. It is not a fringe benefit to congressmen. The statute was created when Congress eliminated a bunch of mandatory reporting statutes and said we want to make sure congressmen. You create fringe benefits for certain committee assignments. Committee X, no one likes to be on that committee. It's particularly oversight. It's the most boring committee on Congress. Only the people who really ticked off the leadership get stuck on that committee. It doesn't do anything for your constituents. But as a fringe benefit, when you're on that committee, you have an informational right. That's a fringe benefit that runs with the committee. If the argument is tied to your service on the committee, I have a very hard time understanding describing that as a fringe benefit. Well, you got paid a little extra salary for being on the dog committee that no one wants. That would be a fringe benefit. And so and so they say you get more information. Okay. Maybe you won't want it. It's a dog committee assignment. But you can have some extra information if you want it. All I would say is this statute, as opposed to the other. No, I would ask to that. Could that be, could you have Article III standing as long as, under Powell's theory, as long as it's understood to be a benefit that runs with being a member of Congress? I will grant that there may be hard questions on the margins about where the line is. Can an informational injury be a fringe benefit? Yeah. I think it is possible to conceive of it as such. I think that you could imagine statute, very unlike this one, that could be there. And some of your hypotheticals probably push on the line of where you withdraw, where it ceases to be a fringe benefit and is an oversight statute. This statute isn't within a million miles. FOIA is an oversight statute, right? No, it's not. Yes, it's oversight by people. Transparency of your government. You get to know what your government is doing. That's oversight. That's true. But your subjective motive doesn't, you don't have to have any legitimate purpose when you file a FOIA request. No, but motive doesn't matter at all under FOIA. It could be for an institutional purpose by a legislature. That's my point, Your Honor. FOIA, you have the right in your private capacity to do with it as you wish. That is not what this statute is. There is a reason that their complaint, when they articulate the injury, they don't say, I'm just curious about this information. I would like it. That's what many a FOIA plaintiff says in their complaint. Their complaint says we need this information because it's interfering with our legislative oversight. That's not just an inexplicable footfall by my experienced colleague. He said that for a reason. He knows that this statute, unlike the hypothetical statute you suggested, is an oversight statute. Its statutory context tells us it's an oversight statute. That's how it's always been operated. And to take a step back and say. Is the right to the constitutional right not to be arrested, interfered with, on going to or from Congress that's in the Constitution itself? Is that an institutional right? It certainly runs with the seat. Look, I think that would probably be misunderstood. This is another one where it's sort of close to the line. But I think your freedom of personal liberty, your right to actually move. It's not my ability. No, it's not my personal ability. I can move as a person. What I can't do is move as a member of Congress. That's right. But it is a right that is tied to your office, much like your salary. But it benefits you in your private capacity. You have freedom of movement. What private capacity? No, your private capacity is only going to and from Congress. It's not going to the grocery store. That's fine. But even within that limited sphere, you're free to not be arrested. That is a benefit of being in Congress, but it is a benefit that is tied to your – it is a – you could think of it as another type of fringe benefit. The benefit of getting information would not have that same status. Again, no one thinks that this statute is giving congressmen the right to the information just for their own benefit. It is giving – No, no, no. But did you know – I'm really – because I find this – this is like the perfect law school exam. It's sort of right down the middle of the standing cases. It really – it really is. So I'm really trying to understand when you start characterizing something that is – that is an element, a constituent element of being a member of Congress, you don't get it unless you're a member of Congress. It ends as soon as you're no longer a member of Congress. I assume the reason that it's in the Constitution is to protect the institutional functioning of Congress, and so we would say their ability to get to Congress without the executive being able to arrest them and throw them all in jail is very much a structural institutional right that runs with the seat. It's a – that has got to be an institutional right. Again, just as your salary is tied to your office but it benefits you personally, it lines your pocket, whether or not you cease to be in Congress the day after you file that suit. But then why – I'm really – I'm all honestly trying to understand why then my right to get information, to know more things in my head – I could use them personally, I could use them institutionally – isn't – doesn't have the same status. That's what I'm really – Because that's not right. Because what you just said, you could use it personally or you could use it institutionally, is not correct. Does it say in the statute they have to use it institutionally? I thought it just – that defined the scope of what they could ask for. It would render the statute unconstitutional. Again, to go back to Judge Tatel's – What they're thinking in their head? What they're thinking in their head? No. Where does it say motive? Again, to go back to Judge Tatel's question, imagine 2954 said any member of Congress can ask for any information from the executive branch for any reason or no reason at all. I didn't ask that question. No, I know. You were trying to – sorry. You were trying to avoid that by emphasizing that there's a jurisdictional element in 2954. Yes, exactly. I'm sure. And what I'm trying to say is that on your conception, imagine there wasn't a jurisdictional element. Imagine the statute just said – Imagine what? No, I'm not changing what the statute says. I'm just saying in my head, I don't think I'm going to use this in my committee work. I'm just curious to know how much money you all spent – you know, the leaders of the agency spent on airplane tickets to travel abroad. It's squarely within the tax. And what I'm suggesting, Your Honor, is that given that the Supreme Court has expressly stated that a congressional request for information just for the personal aggrandizement of the investigators and not to pursue a legitimate legislative function would not just be unconstitutional, but in defense of – That was how it was being used on the ground. It's a merits question. I understand. What does that have to do with Article III standard? What I was trying to suggest, Your Honor, is you should not read this statute in a way to avoid the Article III problem that creates an Article I problem. You can – it is conceptually possible to think of a statute that provides fringe benefits to congressmen, that they have a right to information regardless of how they use it. I don't disagree. You can theorize – We already have that right under FOIA. And there's no Article I problem with a member of Congress going, for institutional reasons, for personal aggrandized reasons, I want this information from the agency. But that's because it has nothing to do with them being congressmen. And you and I or anyone off the street can file that same thing. This statute gives a right only to congressmen. And you can view it in one of two ways. You can view it as everyone has always understood it, including them in their complaint, as a method of oversight, in which case it is not a fringe benefit. It is part of their legislative functions. Or you could counter to its complete historical understanding, view it as the sort of fringe benefit hypothetical statute you articulated, where they could ask for this information even if they don't really care at all for legislative purposes. They're just curious. If you hypothesize a statute like that, I agree that maybe there's not an Article III standing problem, but only by creating an Article I constitutional problem. And it would be very odd to read this statute that way. Article I constitutional problem where members of Congress ask for information from an agency. For a non-legitimate legislative function. That is the square holding of multiple Supreme Court cases. Which one? So, among others, Watkins. The quote I keep reading to you is from page 187 of Watkins, where the Supreme Court said an investigation by Congress solely for the, quote, personal aggrandizement, close quote, of the investigators would be, quote, indefensible. I agree. Right? You have to be doing it for a legitimate. But that's a merits question. Look, I agree. If you want to read the statute to create a personal aggrandizement. No, no, no. I wasn't suggesting we do. I was suggesting the question of whether a particular request would run afoul of Watkins or not is a merits question. That's all. That's true. But whether you view this statute as a whole, at the wholesale level, whether you view it as conferring a fringe benefit on Congressmen or whether you view it as legislative oversight is quite relevant. Mr. Mupan, I want to ask you a question linked to your interesting comment about we shouldn't decide this case in a way that creates an Article I problem. Am I right that one of the reasons for this statute was to protect minority members of Congress, right? So I don't think it's quite as clear as that, Your Honor. No? Well, the reason is it is true that on the House side, when the statute was created, the number that was specified was a minority. That wasn't true on the Senate side. I believe the number was five. And at the time, the relevant committee, five was the majority. But I don't disagree that it does have that effect, whether or not it was there to express purpose. Well, that sort of gets to my point. Assuming it is there for Congress's purpose. So Congress has made a judgment that the legislative process works best when minority member access to information is protected. That's one way to look at this statute. And wouldn't it create a serious Article I problem if an Article III court intruded into Congress's own procedures as to how to function by declaring that information unconstitutional? No, Your Honor, but I think one important thing to emphasize is the statute might create a right to the information. It doesn't create a right to sue. And this is very important. So the Supreme Court in Reed emphasized the difference between Congress authorizing a committee to ask for information and Congress authorizing the committee to then sue for it. But your motion to dismiss argues there's no cause of action, correct? It does, but to answer your question from earlier, we don't think that that is just a cause of action issue. We think it is actually relevant to the Article III standing issue for two reasons. And how is that? So, first of all, we don't... And in fact, at standing, we have to assume they're right that they have a cause of action. They don't have to be right. We just assume it, correct? So... Isn't that the way standing works? Look, I'll say two things, Your Honor.  expressly that they hadn't been authorized to sue. So I think that whether they have a – whether they've been authorized by the House to sue is relevant to the Article III. Wait, I'm sorry. In Reins, they said what? One of the factors that the Court mentioned in the final paragraph of the opinion when Reins... Reins. Yeah. One of the factors it mentioned in the final paragraph of the opinion as a consideration was that the House had not authorized those members to sue on behalf of Congress. You mean those particular members? Those particular members. But it had created a cause of action, right? Right. Which is all the more reason why they should be in trouble because they don't even have that. They don't even have the cause of action at all, let alone the cause of action to sue on behalf of the House. And this was described – discussed in a fair bit of detail in the brief that the Bipartisan Legal Advisory Group filed in the Waxman litigation where they emphasized the problems with allowing  executive privilege disputes. That is something that has always been centralized in the House and for good reason. And so when you ask whether there would be a separation of powers problem and insisting on maintaining that, I think there's a very good reason why Congress has not authorized these individuals to sue at all, let alone on behalf of the House. And we know that matters for separation of powers purposes because cases like – and for standing purposes because cases like Bethune-Hill and Arizona legislature and Reins all emphasize that even if an institution could ever sue without absent personal injury, it's got to be the institution itself, not a subcomponent of the institution. Counsel? For Reins, we used to always take into account whether the congressional plaintiffs had potential relief from their – through their colleagues rather than the courts. I'm trying to remember, but I think in Chenoweth we said that was still relevant after Reins, and I think in Reins itself that's also mentioned, is it not? Not only that. In Campbell, it's made – in Campbell v. Clinton, which is after Chenoweth, it's the central factor that this Court relied on to say why this wasn't a nullification case like Coleman. So now in your brief, I think you adduced several possible avenues of relief, some of which I frankly think are very far-fetched, such as impeachment over something like getting some GSA documents. It makes no sense. But getting a resolution from the House would seem to be the obvious available alternative. That's one alternative. Another alternative would be the use of the appropriations, which is what Campbell actually identified as one of the legislative tools, and I don't think that's at all far-fetched to say that if GSA isn't providing information, that the House as a whole thinks it's important, that the House would use its appropriations power over GSA to do something about it. Well, that's a little like saying you've got nuclear weapons, therefore you have to redress. Well, again, Your Honor, that was an argument that I believe Judge Randolph made in Campbell, but the majority in Campbell did point to those tools as relevant to the analysis. If I could make one last point about Coleman, because I do think it's important. My colleague repeatedly tried to suggest that Coleman proves that it must be possible for there to be a personal private right on behalf of legislators. I think that's just a misreading of Coleman as the way the reigns described it. If you look at how reigns described Coleman, it described it as an institutional injury, and what the key point is, is that there you had 20 senators. They were essentially the majority of the state senate. They were essentially functioning as the state senate. So it's really no different than Arizona legislature, which says, of course an institution, qua institution, can in some circumstances sue. But this Court and the Supreme Court have never extended that to Congress. In Arizona, in reigns, in every such case, the Supreme Court has gone out of its way to say we are not saying that the fact that a state legislature can sue means that a Congress or a subcomponent of Congress can sue, because that does present severe separation of powers problems, given the history that's described in reigns. Those sorts of suits have never been brought. And thank you, Your Honor. I appreciate your time. Yeah, thank you. Mr. Vladeck, you were out of time, but you can have three minutes. Thank you. First of all, nothing in reigns supports the idea that the Court thought in Coleman thought that the legislatures were suing on behalf of the Kansas legislature. That is just not an accurate reading of reigns. Second, let me just reemphasize that Coleman cannot be considered to be only an institutional injury. The injury that is required by Article III is a personal injury that is distinct to each plaintiff. The plaintiffs in Coleman would not have had standing, could not have pursued their claim in the United States Supreme Court unless they had also suffered personal injury. I'd like to address quickly Judge Millett's question about separation of powers. I would urge you to read Sixth Opinion of the Legal Counsel. It's cited on page 7. The site there is to page 632. The jump site that I would refer you to is at 643. It's Ted Olson as the Assistant Attorney General for the Office of Legal Counsel pointing out that Congress is, speaking of the seven-member rule, Congress has enacted a provision that on its face requires any executive agency to submit to the Government Operations Committee, now the Oversight Committee, any information requested of it relating to any matter within the jurisdiction. This provision, however, has been narrowly construed, excuse me, narrowly interpreted by the executive branch to grant pertinent committees access to only the types of information that has traditionally been made available to Congress, and that is not subject to valid claims of executive privilege. So to the extent that there's concern about this and there's further discussion about this, these cases have not ever yet, and there have been lots of requests under this, produced a response over executive privilege, which I think lessens the separation of powers. And the last thing is authorization. Can't they say in this case that they turned over everything to you, you would get under FOIA? I think they said in district court. And so, So they have more widely than whatever they've withheld, they would say falls within that language? I don't believe that is correct. I think there are all sorts of materials that, and also, the seven-member rule is not FOIA. It does not have the exemptions that FOIA has. And traditionally, the way these matters have been worked out, as they've been worked out here, is the committee simply pledges and puts in procedures to ensure that sensitive information is not shared beyond the confines of the committee. So Congress and the executive branch exchange sensitive information all of the time. The last one I'd like to address is the authorization question. It is true that this group did not seek authorization. They were not suing, unlike in Reed, on behalf of the House of Representatives. They were suing in their own name. The statute doesn't require authorization because the right, as we emphasize, has to be personal to the members or else there is no real right here. And it also would be anomalous to require these members to seek the House's  authorization. The statute does not assign power to the House of Representatives. It assigns power to the committee and to members. There was no authorization in Coleman. Coleman did not, the 20 members of the legislature, did not seek the authorization of the legislature there. There was none in AT&T until after the district court proceeding, when Mr. Moss was then authorized by the Senate. And there certainly was none in Kennedy v. Sampson. This Court spent a lot of time looking at the authorization there. And finally the House could authorize this case tomorrow. I believe it could, Your Honor. But you don't believe it has to. Right. We do not believe it has to. And I think it would be for the House a bad precedent to ask the House to basically give some sort of authorization when the statute does not involve the House as a participant in making the decision about what information to seek. Do you, what, am I right that, what's your reaction to my question to Mr. Lupon about the purpose of the statute, to protect minorities? So what is now today. How solid is that point? So I think it's quite solid, Your Honor. The provision that is now Section 2954 was Section 2 of the Act of May 29th, 1928. It was written by the House. At the time it was written, the House had 28, 21 members, 13 in the majority, 8 in the minority. It is quite clear that this was a deliberate selection on the House's part. My friend is right that the Senate, which then wrote its own provision about what number it wanted, was only constituted of 8 members, 5 in the majority, 3 in the minority. It shows 5. There is no legislative history on why 5 was selected. I speculate, and I say it's speculation in our opening brief, that it was based on the Senate Select Committee that did the investigation into Mallory Dougherty, the brother of then-Attorney General Dougherty, in the Teapot Dome scandal. So it sounds like the House wanted to protect the minority, but maybe the Senate didn't? I think that's right, though. The Senate was a tiny committee, and much of the oversight at that time was done by the House, which has, because it's far more numerous, had more resources to engage in that kind of oversight. Thank you, Your Honors. Mr. Vladek, Mr. Lupon, thank you both for your helpful arguments and briefs. The case is submitted.
judges: Tatel, Millett, Ginsburg